Doe v Bloomberg, L.P. (2019 NY Slip Op 06728)





Doe v Bloomberg, L.P.


2019 NY Slip Op 06728


Decided on September 24, 2019


Appellate Division, First Department


Kern, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on September 24, 2019
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Dianne T. Renwick, J.P.
Sallie Manzanet-Daniels
Marcy L. Kahn
Cynthia S. Kern
Peter H. Moulton, JJ.


9406 

[*1]Margaret Doe, Plaintiff-Respondent,
v
Bloomberg, L.P., et al., Defendants, Michael Bloomberg, Defendant-Appellant.



Defendant Michael Bloomberg appeals from an order of the Supreme
Court, Bronx County (Fernando Tapia, J.), entered September 10, 2018, which, upon reargument, denied his motion to dismiss the first, second and third causes of action as against him.




Proskauer Rose LLP, New York (Elise M. Bloom and Rachel S. Philion of counsel), for appellant.
The Clancy Law Firm, P.C., New York (Niall MacGiollabhui of counsel), for respondent.



KERN, J.


On this appeal, we are asked to determine when an individual owner or officer of a corporate employer may be held strictly liable as an employer under the New York City Human Rights Law (City HRL)(Administrative Code of City of NY § 8-107[13][b]). We find that an individual owner or officer of a corporate employer may be held strictly liable as an employer under the City HRL, in addition to the corporate employer, only if the plaintiff sufficiently [*2]alleges that the individual encouraged, condoned or approved the specific discriminatory conduct giving rise to the claim. As the plaintiff in this case failed to allege that individual defendant Michael Bloomberg encouraged, condoned or approved the specific discriminatory conduct she alleges in the complaint, we find that the complaint should be dismissed as against Mr. Bloomberg in its entirety.
The allegations in the complaint are as follows. In September 2012, plaintiff began working in the marketing department at defendant Bloomberg L.P. as a temporary employee selling subscription services to various newsletters. At that time, she was a 22-year-old recent college graduate and had never before held a professional job. Defendant Nicholas Ferris was the Global Business Director of the Bloomberg Brief Newsletter Division and was plaintiff's direct supervisor.
Mr. Ferris allegedly began making unwanted advances toward plaintiff a few weeks into her employment at Bloomberg L.P. In or around January 2013, Mr. Ferris inappropriately touched plaintiff during a Bloomberg L.P. radio event. Mr. Ferris continued to regularly send plaintiff inappropriate and offensive emails and "Instant Bloomberg" (IB) messages throughout 2013. He invited plaintiff to lunches and "quick drinks" during and after work, which plaintiff often attended. Plaintiff alleges that she was concerned Mr. Ferris would retaliate if she rejected his advances as he held the decision-making authority to hire her as a permanent employee. Mr. Ferris allegedly raped plaintiff on two occasions, once in February 2013 and once in March 2013, while she was intoxicated. Plaintiff states that Mr. Ferris caused her to become dependent on drugs that he hid in various locations throughout the Bloomberg L.P. office.
Plaintiff alleges that she did not report Mr. Ferris's conduct to Bloomberg L.P.'s Human Resources Department because she thought the complaint would be ignored or trivialized and would subject her to retaliation. Although plaintiff requested that the HR Department move her desk away from Mr. Ferris's desk, she did not state the basis for her request.
Plaintiff alleges that by October 2015, her mental and physical health had deteriorated and she was placed on indefinite medical leave for major depressive disorder and anxiety disorder. In or around December 2015, Bloomberg L.P. terminated Mr. Ferris.
With respect to Mr. Bloomberg, the allegations in the complaint are as follows. Following Mr. Bloomberg's example and leadership, Bloomberg L.P. bred a hostile work environment that led to the type of discrimination plaintiff experienced. Mr. Bloomberg was sued in a class action brought by female employees who alleged sexual harassment and creation of a hostile work environment while he was CEO of Bloomberg L.P. Mr. Bloomberg was also accused of condoning systemic top-down discrimination against female employees in a sexual harassment suit brought by the US Equal Employment Opportunity Commission on behalf of 58 female employees, not including the plaintiff. The complaint also cites various magazine articles and statements by public figures describing unsavory conduct and comments made by Mr. Bloomberg, directed at or regarding women other than plaintiff.
Plaintiff commenced this action against Bloomberg L.P., Mr. Bloomberg and Mr. Ferris. In a decision dated December 5, 2017, the motion court granted a motion by Mr. Bloomberg to dismiss the complaint against him in its entirety. However, upon reargument by the plaintiff, the motion court held that plaintiff sufficiently stated claims against Mr. Bloomberg as an employer under the City HRL.[FN1]
We now reverse and find that the complaint should be dismissed as against Mr. Bloomberg in its entirety. On a motion to dismiss pursuant to CPLR 3211(a)(7), "[w]e accept the facts as alleged in the complaint as true, accord plaintiff[] the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (Leon v Martinez, 84 NY2d 83, 87-88 [1994]). "However, factual allegations that do not state a viable cause of action, that consist of bare legal conclusions . . . are not entitled to such consideration" (Skillgames, LLC v Brody, 1 AD3d 247, 250 [1st Dept 2003]).
The City HRL imposes strict liability on an "employer" for the discriminatory acts of the employer's managers and supervisors (see Administrative Code of the City of New York § 8-107[13][b][1]; Zakrzewska v New School, 14 NY3d 469, 480-481 [2010])[FN2]. Specifically, Administrative Code § 8-107(13)(b) provides:
"An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision 1 or 2 of this section only where:
(1) The employee or agent exercised managerial or supervisory
responsibility . . . ."
However, the statute does not provide a definition of "employer" and the legislature has not provided guidance as to how "employer" should be defined under the statute. The legislature has also not provided guidance as to when an individual, in addition to the corporate employer, may be held strictly liable under the statute.
The Court of Appeals has held that section 8-107(13)(b)(1) of the Administrative Code holds corporate employers strictly liable for the discriminatory acts of their managers and supervisors (see Zakrzewska, 14 NY3d at 469). Additionally, pursuant to the plain language of the statute, where the only employer is an individual and there is no corporate employer, the individual may be held strictly liable for the discriminatory acts of his or her managers and supervisors as such individual is the only possible employer under the statute. However, the Court of Appeals has never addressed the issue of when an individual, in addition to the corporate employer, may be held strictly liable under section 8-107(13)(b)(1) of the Administrative Code. Based on a review of the cases that have addressed the issue, we find that in order to hold an individual owner or officer of a corporate employer, in addition to the separately charged corporate employer, strictly liable under section 8-107(13)(b)(1) of the Administrative Code, a plaintiff must allege that the individual has an ownership interest or has the power to do more than carry out personnel decisions made by others and must allege that the individual encouraged, condoned or approved the specific conduct which gave rise to the claim.[FN3]
This Court has twice explicitly addressed the issue of when an individual may be held strictly liable, in addition to the corporate employer, under section 8-107(13)(b)(1) of the Administrative Code, and held that an individual will be held strictly liable under the statute if he or she encouraged, condoned or approved the specific discriminatory behavior alleged in the complaint. In Boyce v Gumley-Haft, Inc. (82 AD3d 491, 492 [1st Dept 2011]), this Court denied summary judgment to the individual owner of the corporate employer under section 8-107(13)(b)(1) of the Administrative Code because there were issues of fact as to whether he "encouraged, condoned or approved" the specific discriminatory conduct alleged by the plaintiff (82 AD3d at 492). This Court reiterated this standard in McRedmond v Sutton Place Rest. & Bar, Inc. (95 AD3d 671, 673 [1st Dept 2012]), a case in which we denied summary judgment to the individual officers of the corporate employer under section 8-107(13)(b)(1) of the Administrative Code because there were issues of fact as to whether they condoned or participated in the discriminatory conduct complained of by the plaintiff.
All of the federal cases cited by the parties which have addressed the specific issue before us now have also held that an individual will only be held strictly liable under section 8-107(13)(b)(1) of the Administrative Code if he or she participated, in some way, in the specific discriminatory conduct alleged in the complaint (see Marchuk v Faruqi & Faruqi, LLP, 100 F Supp 3d 302, 309 [SD NY 2015] [a plaintiff must establish "at least some minimal culpability on the part of (the company's individual shareholders)" in order to hold them liable as employers under the City HRL]; Zach v East Coast Restoration & Constr. Consulting Corp., 2015 WL 5916687, *1, 2015 US Dist LEXIS 138334, *1 [SD NY 2015] [denying plaintiff's motion to add the president of the corporate employer as an individual defendant under the City HRL because the proposed amended complaint failed to "allege any knowledge, participation, or involvement whatsoever" in the discriminatory conduct detailed in the complaint]; Burhans v Lopez, 24 F Supp 3d 375, 385 [SD NY 2014] [allowing plaintiffs' claims to proceed against the individual defendant as an employer under the City HRL on the ground that plaintiffs "sufficiently allege that (the individual defendant) was personally involved in the conduct in question"]).[FN4]
We note that the legislative history of section 8-107(13)(b)(1) does not address whether an individual owner or officer of a corporate employer may be held strictly liable, in addition to the corporate employer, absent a finding of culpability on the part of the individual. However, holding an individual owner or officer of a corporate employer liable under the City HRL as an [*3]employer, without even an allegation that the individual participated, in some way, in the specific conduct that gave rise to the claim, would have the effect of imposing strict liability on every individual owner or high-ranking executive of any business in New York City. The City HRL is not so broad that it imposes strict liability on an individual for simply holding an ownership stake or a leadership position in a liable corporate employer.
Moreover, interpreting section 8-107(13)(b)(1) of the Administrative Code to impose liability on an owner or officer of a corporate employer in his or her individual capacity without any inquiry into his or her personal participation in the conduct giving rise to the claim would be inconsistent with the principles underlying this State's corporate law (see Marchuk, 100 F Supp 3d at 309). "The law permits the incorporation of a business for the very purpose of enabling its proprietors to escape personal liability" (Walkovszky v Carlton, 18 NY2d 414, 417 [1966]). Indeed, a corporate owner or officer may be held individually liable for a tort committed by the corporation but only if the corporate officer or owner "participates in the commission of [the] tort" (American Express Travel Related Servs. Co. v North Atl. Resources, Inc., 261 AD2d 310, 311 [1st Dept 1999]). Moreover, a plaintiff who attempts to pierce the corporate veil and hold a corporate officer or owner liable for an obligation of, or a wrong committed by, the corporation must show complete domination of the corporation and that "the [individual], through [his] domination, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against [the plaintiff]" (Matter of Morris v New York State Dept. of Taxation and Fin., 82 NY2d 135, 142 [1993]). Thus, some participation in the specific conduct committed against the plaintiff is required in order to hold an individual owner or officer of a corporate employer personally liable in his or her capacity as an employer.
Based on the foregoing, we find that plaintiff's City HRL claims must be dismissed as against Mr. Bloomberg because plaintiff has failed to sufficiently allege that Mr. Bloomberg is her employer for purposes of the City HRL. She has failed to allege that Mr. Bloomberg encouraged, condoned or approved the specific discriminatory conduct allegedly committed by Mr. Ferris.
Plaintiff alleges that Mr. Bloomberg has been sued for his own discriminatory conduct against others, that he has displayed discriminatory conduct toward other women, that he has made discriminatory remarks about other women and that he has created a culture of discrimination and sexual harassment at Bloomberg L.P. However, such allegations, even if true, fail to support a finding that Mr. Bloomberg was plaintiff's employer under the City HRL because they fail to connect Mr. Bloomberg in any way to the specific discriminatory conduct allegedly committed by Mr. Ferris. Plaintiff fails to allege any facts from which it can be inferred that Mr. Bloomberg was aware or should have been aware of the discriminatory conduct committed by Mr. Ferris. Plaintiff never complained to Bloomberg L.P.'s HR Department about Mr. Ferris's conduct and there are no allegations in the complaint that Mr. Bloomberg knew or should have known about Mr. Ferris's conduct toward plaintiff, that Mr. Bloomberg knew or should have known that Mr. Ferris behaved in a discriminatory manner toward women other than the plaintiff or that Mr. Bloomberg had any involvement or interactions with Mr. Ferris at any point.[FN5]
Plaintiff's assertion that the mere allegation that Mr. Bloomberg created a culture of discrimination and sexual harassment at Bloomberg L.P. is sufficient to sustain a claim against him as an employer under section 8-107(13)(b)(1) of the Administrative Code is unavailing as there is no authority for such conclusion. Plaintiff's reliance on Burhans (24 F Supp 3d at 375) is misplaced. In Burhans, the district court allowed the litigation to proceed against the individual defendant as an employer under the City HRL based on the plaintiffs' allegation that the individual defendant was personally aware that the employee who allegedly committed the discrimination had done so before on numerous occasions and not merely based on the plaintiffs' allegation that the individual created a culture of discrimination. Here, unlike Burhans, there are no allegations that Mr. Bloomberg was aware of Mr. Ferris's alleged discriminatory conduct toward plaintiff or toward anyone else.
Plaintiff's reliance on Irizarry v Catsimatidis, (722 F3d 99 [2d Cir 2013]), is similarly misplaced as that case is distinguishable. In Irizarry, the Second Circuit held that defendant John Catsimatidis, the chairman, president and CEO of Gristede's Food, could be held personally liable for violations of the Fair Labor Standards Act's (FLSA) overtime provisions, without regard to his personal culpability in the FLSA violations. However, the reasoning behind such holding is inapplicable here because the FLSA is an entirely different statute than the City HRL. The FLSA establishes minimum wage, overtime pay, record keeping and child labor standards. Thus, the requirements of the economic reality test and a CEO's operational control of the corporate employer are far more important, on their own, in establishing liability for FLSA violations than they would be for establishing liability for violations based on discriminatory conduct under the City HRL.
Accordingly, the order of the Supreme Court, Bronx County (Fernando Tapia, J.), entered September 10, 2018, which, upon reargument, denied defendant Michael Bloomberg's motion to dismiss the first, second and third causes of action as against him, should be reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment dismissing the complaint as against Michael Bloomberg.
All concur except Renwick, J.P. and
Manzanet-Daniels, J. who dissent in
an Opinion by Manzanet-Daniels, J.




MANZANET-DANIELS, J. (dissenting)


The City HRL is broader than its state counterpart and is to be construed liberally, as the statute itself dictates and as our highest court has decreed (see Administrative Code of City of NY § 8-107 et seq.). The majority would disregard the plain wording of the statute concerning the circumstances under which an employer is strictly liable, as well as the express purpose underlying the Restoration Act amending the City HRL that the statute requires an independent liberal construction in all circumstances (see Local Civil Rights Restoration Act of 2005 [Local Law No. 85]). I accordingly dissent.
Section 8-130 of the City HRL makes explicit that "[t]he provisions of this title shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York state civil and human rights laws, including those laws with provisions worded comparably to provisions of this title, have so been construed."
As noted by Justice Acosta, writing for the majority in Williams v New York City Hous. Auth. (61 AD3d 62 [1st Dept 2009], lv denied 13 NY2d 702 [2009]), the City HRL expressly "requires an independent liberal construction analysis in all circumstances, even where state and federal civil rights laws have comparable language" (id. at 66). Such independent analysis must "be targeted to understanding and fulfilling what the statute characterizes as . . . the City HRL's uniquely broad and remedial purposes'" (61 AD3d at 66; see also Bennett v Health Mgmt. Sys., Inc., 92 AD3d 29, 34-35 [1st Dept 2011], lv denied 18 NY3d 811 [2012]). The Restoration Act amended the City HRL to mandate that all provisions of the City HRL be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible" (Albunio v City of New York, 16 NY3d 472, 477-478).
In Patrowich v Chemical Bank (63 NY2d 541 [1984]), the Court of Appeals held that an individual qualifies as an "employer" under the State HRL when shown to have an ownership interest in the relevant organization or the power to do more than carry out personnel decisions made by others (id. at 542). Bloomberg, the founder, namesake, and majority owner of Bloomberg L.P., clearly qualifies as an (1) individual with an ownership interest; as well as (2) someone with the power to do more than carry out the personnel decisions of others, and the majority does not contend otherwise. This should end the inquiry, particularly in light of the current pre-discovery posture and our mandate to give the City HRL "an independent liberal construction analysis in all circumstances" (Williams, 61 AD3d at 66). As noted in Williams, "the text and legislative history represent a desire that the City HRL meld the broadest vision of social justice with the strongest law enforcement deterrent" (61 AD3d at 68).
Patrowich and its progeny enunciate a two-prong disjunctive standard for determining who constitutes an "employer" under the State Human Rights Law and other statutes. Once someone is determined to be an "employer," a court must then turn to the question of liability under the relevant statute, i.e., whether an employer has "encouraged, condoned or approved" the underlying discriminatory conduct so as to be liable under the State HRL; or whether the employee in question (here, Ferris) has "exercised managerial or supervisory control" so as to render Bloomberg strictly liable under the City HRL. The majority collapses these two distinct requirements, in effect holding that only someone who "encourages, condones or approves" is an "employer." This error — conflating the definition of "employer" with the bases for liability — infects the majority opinion. The majority would graft the State standard onto the City HRL, subverting the purpose underlying the more liberal statutory scheme of the City HRL. Indeed, a standard requiring "encouragement, condonation or approval" is antithetical to the very concept of vicarious liability.
Section 8-107 of the City HRL creates an interrelated series of provisions that govern an employer's liability for an employee's discriminatory conduct in the workplace. This framework simply does not match up with certain defenses under the State HRL and is not to be so construed (see Zakrzewska v New School, 14 NY3d 469 [2010]). Indeed, the Court of Appeals cautioned against making the very same error the majority now makes:
For the same reason, we may not apply cases under the State Human Rights Law imposing liability only where the employer encourages, condones or approves the unlawful discriminatory acts. . . . By the plain language of NYCHRL 8-107(13)(b), these are not factors to be considered so long as the offending employee [in this case, Ferris] exercised managerial or supervisory control"
(id. at 481).
In arriving at its reading of "employer," the majority cites Boyce v Gumley-Haft, Inc. (82 [*4]AD3d 491, 492 [1st Dept 2011]), and McRedmond v Sutton Place Rest. & Bar., Inc. (95 AD3d 671 [1st Dept 2012]). In McRedmond, we found certain individual defendants to be liable under the State HRL. We thus found that those same individuals, a fortiori, were liable under the City HRL — hardly a surprising conclusion given that the City HRL is indisputably broader than its State counterpart.
In Boyce, a memorandum opinion from which it is difficult to divine much in the way of factual background or reasoning, we found that the individual defendant 50% owner of a limited liability company could be liable under the City HRL where the proof showed that he "encouraged, condoned, or approved" of the underlying discriminatory conduct, citing Administrative Code
§ 8-107(13)(b)(1).
To the extent Boyce may be construed along the lines the majority suggests, it is at odds with the definition of "employer" articulated in Patrowich, at odds with the overarching statutory purpose, as articulated in Williams and Bennett, and at odds with the express test of section 8-107(13)(b), which sets forth three independent circumstances under which an employer shall be liable for the conduct of an employee or agent, including where such "employee or agent exercised managerial or supervisory responsibility" (id.). The statute imposes no requirement that the employer encourage, condone or acquiesce in the conduct. I do not believe we should adopt such a drastic interpretation of "employer" absent clearer and more well articulated authority than Boyce.
Neither case is authority for grafting the State standard onto the City HRL, when it is our statutory mandate to construe the City HRL as broadly as possible consistent with its liberal aims. It should be noted that the Legislature has recently amended the State HRL to further expand its reach and the grievances it is intended to remedy.
Federal district courts interpreting the City HRL have arrived at differing conclusions as to the appropriate standard for imposing individual liability on an owner/CEO such as Bloomberg. While some would require "some minimal culpability" on the part of individual owners, consistent with principles of corporate law (see Marchuk v Faruqi & Faruqi, LLP, 100 F Supp 3d 302, 308-309 [SD NY 2015]), many hold, consistent with the plain text of the statute, that a plaintiff seeking to impose liability on an individual "employer" need only show that the individual have an ownership interest or power to carry out personnel decisions; it need not be shown that such individual employer participated or was aware of the discriminatory conduct (see Makinen v City of New York, 167 F Supp 3d 472, 487-488 [SD NY 2016], affd in part and revd in part on other grounds, 722 Fed Appx 50 [2018] ["immaterial" that there was no evidence that the defendant commissioner participated directly in the discrimination since "[h]e could be held liable solely on the basis that he had the power to do more than carry out the personnel decisions of others"];[FN1] Equal Employment Opportunity Commission v Suffolk Laundry Serv., Inc., [*5]48 F Supp 3d 497 [ED NY 2014] [individual co-owner defendants liable under State HRL since they had authority to do more than carry out the personnel decisions made by others]).
The allegations in the complaint are plainly sufficient to state a cause of action at this pre-discovery stage, where we are obliged to accept the facts alleged in the complaint as true and to accord the plaintiff the benefit of every possible favorable inference. Under the City HRL, plaintiff is required only to allege that Bloomberg is an individual with an ownership interest and/or someone with the power to do more than carry out the personnel decisions of others, and that Ferris exercised managerial or supervisory authority over plaintiff, which the complaint alleges.
Even under the majority's heightened culpability standard, the allegations are sufficient. Plaintiff alleges that Bloomberg created, encouraged or condoned a culture of sexual harassment at Bloomberg LLP. Plaintiff alleges, inter alia, that Bloomberg had an internal messaging system, Instant Bloomberg (IB), that served as "a pseudo dating site." Plaintiff alleges that Bloomberg had a "selective practice" of reviewing IB for inappropriate content. Defendant Ferris is alleged to have sent plaintiff offensive and misogynistic emails on work email over a three-year period. Plaintiff also alleges that she communicated with a coworker over IB about Ferris's inappropriate conduct.
Plaintiff alleges that female employees were encouraged to dress provocatively and that employees regularly commented on female employees' appearance using a rating system. Plaintiff alleges that Bloomberg did not provide adequate sexual harassment training and that employees were afforded no effective means of complaining about and/or reporting harassment. Indeed, plaintiff alleges that her request for a change of seating assignment so that she did not have to work in proximity to defendant Ferris, her alleged rapist, went unheeded [FN2]. Plaintiff also alleges that she complained about Ferris's alleged harassment to a social worker in Bloomberg's Employee Assistance Program (EAP), who recommended that she be transferred, but that EAP did not formally demand that Ferris's behavior be investigated and that the transfer never occurred.
Order, Supreme Court, Bronx County (Fernando Tapia, J.), entered September 10, 2018, reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment dismissing the complaint as against Michael Bloomberg.
Opinion by Kern, J. All concur except Renwick, J.P. and Manzanet-Daniels, J. who dissent in an Opinion by Manzanet-Daniels, J.
Renwick, J.P., Manzanet-Daniels, Kahn, Kern, Moulton, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: SEPTEMBER 24, 2019
CLERK



Footnotes

Footnote 1:We need not address whether the complaint states claims against Mr. Bloomberg under the State HRL, since the court dismissed these claims in the December 5, 2017 decision and plaintiff's motion for reargument did not seek to reinstate them.

Footnote 2:This is unlike the New York State Human Rights Law (State HRL), which only imposes liability on an employer for an employee's discriminatory acts if the employer encouraged, condoned or approved the discriminatory conduct (see Matter of Totem Taxi v New York State Human Rights Appeal Bd., 65 NY2d 300 [1985]).

Footnote 3: Neither Patrowich v Chemical Bank (63 NY2d 541 [1984]) nor Kaiser v Raoul's Rest. Corp. ( 72 AD3d 539 [1st Dept 2010]) addresses the issue before us now, specifically, when an individual may be held strictly liable under the City HRL as an employer. Moreover, the Court of Appeals has clearly held that in order for an individual to be held liable as an employer pursuant to the State HRL, it is not enough to show that the individual has an ownership interest in the company or the power to do more than carry out personnel decisions made by others (see Matter of Totem Taxi, 65 NY2d 300). To the contrary, to hold an individual liable as an employer under the State HRL, a plaintiff must also show that the individual encouraged, condoned or approved the alleged discriminatory conduct (see id. at 305).

Footnote 4: The cases cited by the dissent, including Makinen v City of New York (167 F Supp 3d 472 [SD NY 2016], affd in part and revd in part on other grounds 722 Fed Appx 50 [2d Cir 2018]), do not address the specific issue of when an individual owner or officer of a corporate employer may be held strictly liable as an employer under Administrative Code § 8-107(13)(b)(1), in addition to the corporate employer.

Footnote 5: Plaintiff does not state a claim against Mr. Bloomberg based on allegations that Mr. Ferris sent plaintiff offensive and misogynistic messages through Bloomberg L.P.'s IB messaging system and that Bloomberg L.P. had a "selective practice" of reviewing IB for inappropriate conduct. There are no allegations in the complaint that Mr. Bloomberg himself ever reviewed the IB messages between plaintiff and Mr. Ferris or that Mr. Bloomberg should have reviewed the IB messages between plaintiff and Mr. Ferris.

Footnote 1:Defendant's attempt to dismiss Makinen is unpersuasive. The fact that the case involved a public official, as opposed to a private individual, has no bearing upon the relevant analysis. The court in that case looked to the City charter to define the scope of the official's authority, i.e., to determine whether he had sufficient "power, authority, and control" over the governance of the department so as to be considered an "employer" under Patrowich, and thus liable under the City HRL, regardless of his own participation or lack thereof. Here, of course, the individual defendant is the eponymous owner and founder of the corporate defendant, easily qualifying as an employer.

Footnote 2:Plaintiff explained to Human Resources (HR) that Ferris's presence would interfere with her work, though she admittedly did not inform HR of the rape allegation.